UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JOHN B. SHORTON,**                                    Chapter 7
    Debtor                                              Case No. 06-11123-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOHN B. SHORTON,**
    Plaintiff
v.                                                      Adv. P. No. 07-1148
**COMMONWEALTH OF MASSACHUSETTS,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Motion by Defendant Massachusetts Department of Revenue for Summary Judgment." The Debtor, John B. Shorton (the "Debtor"), filed an Response in opposition to the Motion. The Court heard the Motion and the Response on July 31, 2007 and took the matter under advisement. The issue presented is whether, for the purposes of the exception to discharge under 11 U.S.C. § 523(a)(1)(B), the Debtor provided the Massachusetts Department of Revenue ("MDOR") with "a return, or equivalent report or notice" when the Internal Revenue Service notified him that it had issued a final determination of deficiency assessment for additional income tax due for the 1995 and 1996 tax years.

1

**II. FACTS**

The Debtor filed a Chapter 7 petition on April 25, 2006. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, he listed the Internal Revenue Service as a holder of a claim in the amount of $491,262 for the period between 1995 and 1999 inclusive, and the MDOR with a claim in the amount of $725 for the 1995 tax year, as well as a claim in the sum of $23,100 for the 1996 tax year, and a claim in the sum of $41,653 for the period between 1995 and 1999 inclusive, for a total of $65,478.

On May 26, 2006, the Chapter 7 Trustee filed a Report of No Distribution. Approximately four months later, on October 2, 2006, the Court granted the Debtor a discharge with respect to all dischargeable debts. On April 6, 2007, the Debtor commenced the above-captioned adversary proceeding against the MDOR, captioned "Complaint to Confirm Discharge of Unsecured Debt." Through his Complaint, the Debtor sought a declaration that a debt that arose out of a reassessment of his tax obligations for the 1995 and 1996 tax years was not entitled to priority by operation of 11 U.S.C. § 507(a)(8)(A). The MDOR filed an Answer to the Debtor's Complaint in which it admitted that the Debtor had listed it as the holder of an unsecured claim in the total amount of $65,478; that the Debtor's taxes for the periods ending on December 31, 1995 and December 31, 1996 had been increased because of increases in the Debtor's federal income taxes; that notices of reassessment were given to the Debtor on November 22, 2004; that an official reassessment was made in February of 2004; and that more than 241 days had passed since the official reassessment and the filing of the Debtor's Chapter 7 petition.

Although the MDOR raised an issue as to the sufficiency of service of process as an affirmative defense, in its Motion for Summary Judgment it sought a determination that the Debtor's obligations to it, while admittedly not entitled to priority under § 507(a)(8), nonetheless were nondischargeable under § 523(a)(1)(B)(i). It conceded that the Debtor timely filed his 1995 and 1996 Massachusetts income tax returns, but it maintained that in 2004 the Internal Revenue Service ("IRS") notified the Debtor "that it had issued a final determination of deficiency assessment for additional income tax due for the years 1995 and 1996" and that in that same year the IRS notified it through the Federal Exchange Program of the federal deficiency assessment. It further maintained that the Debtor did not file any amended returns for the years 1995 and 1996. The MDOR added that on November 22, 2004 it sent the Debtor Notices of Intent to Assess in the amount of $9,200.53 for the 1995 tax year and in the amount of $20,233.59 for the 1996 tax year; that on February 9, 2005 it sent the Debtor a Notice of Assessment in the amount of $9,340.20 for the 1995 tax year; and that on February 24, 2005 it sent the Debtor a Notice of Assessment in the amount of $20,547.77 for the 1996 tax year. It concluded that the Debtor failed to file any amended returns and, thus, owed it the nondischargeable sum of $30,741.13, including tax and statutory interest due and payable as of April 25, 2006.

The MDOR supported its Motion with the Affidavit of Stephen Kobialka, a "Tax Examiner VII," whom it employed. Mr. Kobialka stated that he had reviewed the books and records maintained by the MDOR in the ordinary course of its business for the purposes of attesting to the facts in the Answer and the Motion for Summary Judgment.

3

He specifically stated that the Debtor had not filed amended tax returns for 1995 and 1996 with the Commonwealth.

The Debtor filed an Response to the MDOR's Motion for Summary Judgment, as well as an Affidavit. In his Affidavit, he represented that approximately seven years after he filed his federal tax returns for the 1995 and 1996 tax years he was audited by the IRS. He also indicated that "[d]ue to the time that had expires [sic] since timely filing and the audit I no longer had the supporting documentation to prove that the income was accurate." He further represented that in several meetings with the IRS he refused to file returns which he believed would be inaccurate. Nevertheless, according to the Debtor

> Just prior to trial, after a conference with trial attorney [sic], a compromise settlement was reluctantly reached.
> It was also agreed that I would make an offer in compromise to reduce the tax burden and that if possible favorable treatment would be accorded.
> At the conference the proposed assessed tax, after discussion was reduced by $10,000. I wanted a further reduction.
> It was also stipulated that the I.R.S. would advise the state should an assessment be made that I deny owing additional taxes and that a compromise settlement was reached.

During the July 31, 2007 hearing, the Debtor represented that the proposed offer in compromise had been rejected by the IRS.[1]

With respect to his communications with the MDOR, the Debtor indicated that he "wrote a letter addressed to the Tax Department at the Commonwealth of Massachusetts

---

[1] The Debtor stated in response to a question about the approval of the offer in compromise: "No, they [the IRS] went on and on and on. They said I wasn't working at the time, and then they gave me some astronomical amount . . . - - which I couldn't - - which I could no way could I do."

4

which I had delivered, advising of the compromise settlement ahs [sic] I did not receive the additional income." The Debtor stated that the MDOR would not act or discuss the issues with him because it had not received any communications from the IRS. The Debtor also indicated that when he received the first Notice of Assessment from the MDOR he again "appeared at their [sic] offices and stated the facts that I no longer had, after 9 years and [sic] supporting documentation to back up my assertion that the taxes I had previously written/discussed were not accurate." The Debtor said that he received another Notice of Assessment and "again inquired/discussed the issues" with the MDOR. He stated that "I was again advised that there was nothing further I could do to stop the assessment," adding "I did not and could not file an amended return that would be accurate as I no longer due to the time lapse have access to the supporting documentation needed to confirm that the return was accurate" . . . [and] . . . "would not file and sign under the pains and penalties [sic] a return I knew was not accurate." The Debtor concluded that, in his view, he had "satisfied the reporting requirement in writing, via telephone and in person." Moreover, he averred that he was unable to find Form 33X, captioned "Massachusetts Amended Individual Income Tax Return," a form referenced by Judge Hillman in an unpublished opinion. *See* <u>Eisner v. Internal Revenue Service and Massachusetts Department of Revenue (In re Eisner)</u>, No. 95-1417 (Bankr. D. Mass. Nov. 20, 1996).

## III. DISCUSSION

5

A. <u>Applicable Law</u>

Section 523(a)(1)(B) of the Bankruptcy Code provides in relevant part the following:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (1) for a tax or a customs duty–
> >
> > > (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
> > >
> > > (B) with respect to which *a return, or equivalent report or notice, if required--*
> > >
> > > > *(i) was not filed or given*; or
> > > >
> > > > (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; . . . .

11 U.S.C. § 523(a)(1)(B)(ii)(emphasis supplied).  The issue in this case is whether the Debtor's assertion that he notified the MDOR of his dispute with the IRS satisfied the requirement that he file or give the MDOR a return or equivalent report or notice following the decision of the IRS to change the amount of his tax liability for the tax years 1995 and 1996.  Notably, the Bankruptcy Code does not require payment of the additional tax - - the filing of a return or equivalent report or notice is all that is required for purposes of the dischargeability of the debt.  Massachusetts law, on the other hand, requires both the submission of a report or return *and* the payment of the tax.  It provides in relevant part:

> If the federal taxable income of a person subject to taxation under chapter sixty-two is finally determined by the federal government to be different from the taxable income as originally reported, *such final determination shall be reported, accompanied by payment of any additional tax due with interest* as provided in section thirty-two, to the commissioner within one year of receipt of notice of such final determination.

Mass. Gen. Laws ch. 62C, § 30 (emphasis supplied).[2]  Pursuant to the Code of Massachusetts Regulations,

> A taxpayer subject to taxation under M.G.L. c. 62 must report to the Commissioner any change in federal taxable income or federal tax credits resulting in increased Massachusetts tax liability within one year of the date of notice of the federal government's final determination, whether or not the audit or other review is complete with respect to issues not addressed in the agreement, accompanied by payment of any additional tax due plus interest. Interest is calculated under the provisions of M.G.L. c. 62C, § 32, from the due date of the original return. Offsets do not affect the determination whether Massachusetts tax liability has increased due to a federal change.
>
> Taxpayers subject to taxation under M.G.L. c. 62 must report changes in federal taxable income in the manner prescribed by the Commissioner and must submit a copy of the federal Revenue Agent's Report, agreement, document, or any other federal report that provides the necessary information illustrating the changes in federal taxable income or federal tax credits. The filing agent for a composite return shall report when there is any final determination, allocated among the affected taxpayers, that increases any taxpayer's Massachusetts tax liability.

830 C.M.R. 62C.30.1(3)(a).  This is the current version of the regulation.  An earlier version of the regulation quoted by Judge Hillman in Eisner referenced Form 33X.  Finally, Administrative Procedure 619.2, quoted by the MDOR in its Memorandum, requires that the changes in federal taxable income or federal tax credits be reported on Form CA-6,

---

[2] The statute was amended effective December 8, 2005.  The amended statute applies to final determinations made after December 8, 2005.

"Application for Abatement/Amended Return," together with "[a] copy of the IRS Form CP-2000 or the IRS Revenue Agent's Report and any other relevant documentation."

In Eisner, the debtor unsuccessfully challenged the disallowance of certain deductions claimed on his federal income tax returns. The IRS sent the MDOR a copy of its Appeals Transmittal and Settlement Memorandum, which reflected an additional, agreed upon tax liability. The debtor did not file amended income tax returns for the tax years for which his deductions were disallowed. The debtor filed a voluntary Chapter 7 petition, and the MDOR subsequently issued a Notice of Assessment. The debtor argued that Massachusetts law did not require an amended return and a report would suffice. In his view, the Settlement Memorandum was the functional equivalent of the filing of a report. The MDOR, on the other hand, contended that the debtor was required to file an amended return and because the debtor failed to do so his tax liability was not discharged.

Judge Hillman identified the issues as whether an amended return is a return with in the meaning of § 523(a)(1)(B); whether a return or a report is required by Massachusetts law and whether the Settlement Memorandum satisfied the requirements of the law. He determined that an amended return was "a return" within the meaning of § 523(a)(1)(B)(ii)(prior to its amendment by BAPCPA) and that an amended return is required under Massachusetts law when there is a reportable change in income. Slip. Op. at 8. Having found that the taxpayer was required to file the appropriate form, he held that the filing of the Settlement Memorandum by the IRS did not satisfy the Debtor's obligation. Id. Citing Blutter v. United States (In re Blutter), 177 B.R. 209, 210 (Bankr. S.D. N.Y. 1995),

he stated: "I join with Judge Brozman in saying that 'a debtor cannot evade his obligations under applicable law by relying on governmental authorities to fulfill them for him. . . . Section 523(a)(1)(B) is addressed to the conduct of the debtor, and is designed to insure that a debtor's misconduct is not rewarded.'" Id.

Courts have adopted a four part test to ascertain whether a document constitutes a "return." To qualify as a return, "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033 (6th Cir. 1999). In Maroney v. United States (In re Maroney), No. 02-1062-A, 2002 WL 31777588 (E.D. Va. Oct. 30, 2002), the court stated:

> The Hindenlang test is a re-tooled amalgamation of widely accepted rulings of both the Supreme Court and the Sixth Circuit defining the term "tax return" under the Internal Revenue Code. *See, e.g.*, Germantown Trust Co. v. Commissioner, 309 U.S. 304 (1940); Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934); and Beard v. Commissioner, 82 T.C. 766, 1984 WL 15573 (1984) *aff'd*, 793 F.2d 139 (6th Cir.1986).
>
> Although the Hindenlang decision itself is not universally accepted, its four-part test is not seriously questioned.

2007 WL 31777588 at * 2. *See also* United States v. Hatton (In re Hatton), 220 F.3d 1057 (9th Cir. 2000). This Court applied the four-part test in Mulcahy v. United States (In re Mulcahy), 260 B.R. 612 (Bankr. D. Mass. 2001).

B. Standard for Summary Judgment

In Desmond v. Varrasso (In re Varrasso), 37 F..3d 760 (1st Cir. 1994), the United

States Court of Appeals for the First Circuit set forth the applicable summary judgment standard. It stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. *See* Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991); Bias v. Advantage Int'l, Inc., 905 F.2d 1558, 1560-61 (D.C.Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990); *cf.* Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir.1990) ("The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted"). When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. *See, e.g.*, Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir.1994); Garside, 895 F.2d at 48; Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1st Cir.1987). This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. *See* Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir.1992) (warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence").

37 F.3d at 763 (footnote omitted).

C. <u>Analysis</u>

The Debtor has not disputed that he was audited with respect to his 1995 and 1996 federal income tax returns and that his offer in compromise was rejected by the IRS. Accordingly, the Court finds that the Debtor was required to report a change in income to the MDOR. The Debtor in his Affidavit set forth his attempts to notify the MDOR about the status of his federal income tax obligations. Indeed, according to his Schedules, he

owes the United States almost half a million dollars.

The Debtor did not produce copies of any written correspondence forwarded or delivered to the MDOR, and he indicated that he could not file amended returns because he lacked the documents necessary to prepare them properly. Accordingly, the Court finds that the Debtor did not submit amended returns to the MDOR. Moreover, the Court finds that the Debtor failed to submit any documents that could purport to be a return or an equivalent report or notice, let alone a document executed under penalty of perjury. Additionally, the Debtor failed to produce any document which contained information that would permit the MDOR to calculate the tax due, although the information it received from the IRS enabled it to assess the Debtor. Although the Debtor in his Affidavit made unsubstantiated assertions in an attempt to convince this Court that he had satisfied the requirement of "a return, or equivalent report or notice," in the absence of copies of, or details about, documents submitted to MDOR, the Court finds that the Debtor failed to satisfy the MDOR's requirements for filing amended returns or the Bankruptcy Code's requirement to file a return or equivalent report or notice. The Debtor failed to submit any evidence to rebut the Affidavit submitted by the MDOR, which established that he did not file amended returns or any equivalent report or notice.

For this Court to deny summary judgment, it would have to accept the Debtor's assertions that his discussions with the MDOR and the submission of papers to the MDOR, which the Debtor did not produce and which this Court has not had the opportunity to review, satisfy the requirement of the state and federal statutes. The Court finds that

Debtor's conclusory statements are insufficient to create a genuine issue of material fact concerning his compliance with the provisions of Massachusetts law.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Motion for Summary Judgment filed by the MDOR.

By the Court,

*Joan N. Feeney*

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: September 6, 2007
cc: John B. Shorton, Celene E. Jackson, Esq.